## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CORNELIUS RODGERS,** | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **3:21-CV-00111 (SRU)** |
| | : | |
| | : | **September 20, 2022** |
| **CITY OF NEW LONDON** | : | |
| **Defendants** | : | |
| | : | |

## <u>MOTION FOR PROTECTIVE ORDER</u>

Pursuant to Fed. R. Civ. P. 26(c) and 30(b)(6), Defendant, CITY OF NEW LONDON, hereby respectfully moves for a protective order to prohibit and/or limit the scope of the Rule 30(b)(6) corporate deposition notice served by Plaintiff, CORNELIUS ROGERS, on Defendant. For the reasons set forth herein, this motion should be granted.

Plaintiff is a nearly 20-year veteran of the New London police force, currently holding the rank of Sergeant. Plaintiff's Amended Complaint alleges that he has been subjected to race discrimination/harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60(b)(1) and (4), by Defendant. Notwithstanding the circumscribed statute of limitations applicable to those claims, Plaintiff now attempts to re-litigate the plentiful discipline he has received over the course of his nearly two decades long career. In that connection, he is not only seeking discovery regarding the discipline he has received for his entire career, but discipline imposed on other officers dating back well over a decade, including discipline for manifestly dissimilar conduct.

In response to that campaign, the City has thus far responded to copious written discovery and produced over 25,000 documents in this <u>single plaintiff</u> claim. Plaintiff has also

expressed his intent to depose several people. Over and above specified individuals, Plaintiff has

served a 30(b)(6) deposition notice setting forth overbroad and unduly burdensome topics.

Therein lies the rub.

Despite an effort to clarify and narrow those topics through a meet and confer discussion

on August 30, 2022 and a revised notice issued on September 2, 2022, the parties have been

unable to reach agreement on the scope of 30(b)(6) testimony. As a result, the City now seeks a

protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure to limit the scope

of a 30(b)(6) notice issued by the Plaintiff.

### I.       **Relevant Background**

Plaintiff has been employed by Defendant as a Police Officer since 2003. (Doc. No. 29,

Amended Complaint, para. 10). As a New London Police Officer, Plaintiff is a member of a

union and subject to the terms of a collective bargaining agreement. (Collective Bargaining

Agreement attached at Ex. 1 at p. 1) Critically, those terms include the right to grieve discipline

and other department action. (Id. at p. 3)

As acknowledged in his Amended Complaint, Plaintiff has been the subject of significant

disciplinary action over the years, including a 20-day suspension for punching a hand cuffed

prisoner and additional discipline for his involvement in a barroom brawl. (Doc. No. 29 at 12(a)-

(d)). Many of those instances date back over 10 years. (Id.)[1] As he admits, Plaintiff returned to

work subject to a last chance agreement in 2010. (Id at 12(d)). Since then, he was promoted to

Sergeant and assigned to the Detective Bureau. (Id. at 10, 14, 18).

---

[1] In point of fact, the Amended Complaint does not reflect the full extent of the discipline Plaintiff has
received during his career. It also fails to mention that he was determined to be unfit for duty in January
2011 and, as a result, was out of work for several months.

Critically, Plaintiff's Amended Complaint expressly states that the earliest of the administrative charges that are a prerequisite to his claims in this suit were filed on March 23, 2020. (Amended Complaint at para. 7). Consistent with the 300-day filing deadline, the look back period for discrete acts of alleged discrimination is limited to May 28, 2019. Consistent with that parameter, Paragraphs 25 through 93, the Amended Complaint catalogues a variety of alleged mistreatment since 2019.

In that litany of alleged slights, Plaintiff admits that he was involved in another use of force incident on April 9, 2019. (Id. para. 31). He studiously avoids, however, that the suspect he struck in the head and stomach was handcuffed to a wall at the time. (*See* Expert Sticca Expert Report attached hereto as Ex. 2 at pp. 5) He also neglects to mention that the 20-day suspension he received was imposed after a thorough investigation, which included a review of recordings and statements from New London and Waterford police personnel. (Id. at pp. 5, 10-15)

In 2020, Plaintiff took the written exam to be promoted to Lieutenant; he scored well. (Amended Complaint at paras. 80, 82). He also performed well enough on the oral exam to be ranked number 2 overall on the list for promotion to Lieutenant. (Id. at paras. 83, 85). Thereafter, the Plaintiff acknowledges that his own police union challenged his ranking because of his recent discipline. (Id. at paras. 86-88). A few years beforehand, the collective bargaining agreement was amended so that if any officer received a suspension of 20 days or more, he or she lost all seniority. (Id. at para. 85; Exhibit 1 at p. 5).  When preference points for seniority were removed, Plaintiff dropped from number 2 to number 4 on the Lieutenant promotion list. (Amended Complaint at paras. 86 to 88). Despite no evidence that race played any role in Defendant's decision. Plaintiff now asserts that this was discriminatory and/or retaliatory. (Id. at paras. 90-93).

## II.      Pertinent Procedural History

The parties have engaged in extensive written discovery. In addition to interrogatories, Plaintiff has served multiple sets of document requests on Defendant, and Defendant has produced over 25,000 pages of documents. Now moving to depositions, Plaintiff has indicated that he plans to depose a number of fact witnesses.

Plaintiff has also served a 30(b)(6) notice seeking a witness or witnesses to testify on behalf of the City about the following:

SUBJECTS

1. Basis for *all* disciplinary and/or corrective action involving Plaintiff, including but not limited to:
   a. Investigations conducted before issuance of discipline and/or corrective action;
   b. Witnesses and/or statements relied upon to issue discipline and/or corrective action;
   c. Reason for discipline and/or corrective action;
   d. Work rule, policy or procedure violated;
   e. Date of discipline; and
   f. Disciplinary action imposed.

2. Basis for *all* disciplinary and/or corrective action involving Todd Lynch, including but not limited to:
   a. Investigations conducted before issuance of discipline and/or corrective action;
   b. Witnesses and/or statements relied upon to issue discipline and/or corrective action;
   c. Reason for discipline and/or corrective action;
   d. Work rule, policy or procedure violated;
   e. Date of discipline; and
   f. Disciplinary action imposed.

3. Basis for *all* disciplinary and/or corrective action involving Deanna Nott, including but not limited to:
   a. Investigations conducted before issuance of discipline and/or corrective action;
   b. Witnesses and/or statements relied upon to issue discipline and/or corrective action;
   c. Reason for discipline and/or corrective action;
   d. Work rule, policy or procedure violated;
   e. Date of discipline; and
   f. Disciplinary action imposed.

4. Basis for *all* disciplinary and/or corrective action involving Charles Flynn, including but not limited to:
   a. Investigations conducted before issuance of discipline and/or corrective action;
   b. Witnesses and/or statements relied upon to issue discipline and/or corrective action;
   c. Reason for discipline and/or corrective action;
   d. Work rule, policy or procedure violated;
   e. Date of discipline; and
   f. Disciplinary action imposed.

5. Basis for *all* disciplinary and/or corrective action involving James Suarez, including but not limited to:
   a. Investigations conducted before issuance of discipline and/or corrective action;
   b. Witnesses and/or statements relied upon to issue discipline and/or corrective action;
   c. Reason for discipline and/or corrective action;
   d. Work rule, policy or procedure violated;
   e. Date of discipline; and
   f. Disciplinary action imposed.

6. Basis for *all* disciplinary and/or corrective action involving Dustin Adkins, including but not limited to:
   a. Investigations conducted before issuance of discipline and/or corrective action;
   b. Witnesses and/or statements relied upon to issue discipline and/or corrective action;
   c. Reason for discipline and/or corrective action;
   d. Work rule, policy or procedure violated;
   e. Date of discipline; and
   f. Disciplinary action imposed.

7. Basis for *all* disciplinary and/or corrective action involving George Potts, including but not limited to:
   a. Investigations conducted before issuance of discipline and/or corrective action;
   b. Witnesses and/or statements relied upon to issue discipline and/or corrective action;
   c. Reason for discipline and/or corrective action;
   d. Work rule, policy or procedure violated;
   e. Date of discipline; and
   f. Disciplinary action imposed.

(See Notice attached hereto as Ex. 3)(emphasis added).

Given the complete lack of temporal limitation on any of the subjects, the undeniably

tenuous nature of some of the specified subjects, and the express terms of Rule 30(b)(6),

Defendant requested a meet and confer pursuant to that Rule. Counsel for the parties engaged in

a meet and confer discussion on August 30, 2022. During the call, Defendant expressed concern

about the complete lack of temporal limitation on the specified subjects and suggested a five year

look back. Defendant also challenged queries into the officers listed in the subjects because they

were not in any way similarly situated to Plaintiff, particularly those that were not even

considered comparators in Plaintiff's own expert's report addressing purported inequities in

internal investigations. (See Sticca Expert report at pp. 33-45). That report notably focused on

Todd Bergeson, Deanna Nott, and Todd Lynch, who were also involved in use of force incidents.

(Id. at pp. 33-45). In contrast, Charles Flynn was allegedly involved in a theft by way of

reporting private duty time he did not work, Dustin Adkins was allegedly involved in an

unspecified assault of a female outside a New London bar, George Potts allegedly improperly

retained a shotgun confiscated from a neighbor and used the NCIC system to determine whether

it was stolen, and James Suarez was involved in a large number of motor vehicle accidents.

(Amended Complaint at paras. 13(c), (d), (f) and (g).

Following the meet and confer session, Plaintiff issued an Amended 30(b)(6) notice,

which states:

## SUBJECTS

1. Basis for *all* disciplinary and/or corrective action involving Plaintiff, including but not
limited to:
    a. Investigations conducted before issuance of discipline and/or corrective action;
    b. Witnesses and/or statements relied upon to issue discipline and/or corrective action;
    c. Reason for discipline and/or corrective action;
    d. Work rule, policy or procedure violated;
    e. Date of discipline; and
    f. Disciplinary action imposed.

2. Basis for all disciplinary and/or corrective action involving Todd Lynch, *from 2008 until
the present*, including but not limited to:
    a. Investigations conducted before issuance of discipline and/or corrective action;
    b. Witnesses and/or statements relied upon to issue discipline and/or
    corrective action;

    c. Reason for discipline and/or corrective action;
    d. Work rule, policy or procedure violated;
    e. Date of discipline; and
    f. Disciplinary action imposed.

3. Basis for all disciplinary and/or corrective action involving Deanna Nott, *from 2008 until the present*, including but not limited to:
    a. Investigations conducted before issuance of discipline and/or corrective action;
    b. Witnesses and/or statements relied upon to issue discipline and/or corrective action;
    c. Reason for discipline and/or corrective action;
    d. Work rule, policy or procedure violated;
    e. Date of discipline; and
    f. Disciplinary action imposed.

4. Basis for all disciplinary and/or corrective action involving Charles Flynn, *from 2009 until the present*, including but not limited to:
    a. Investigations conducted before issuance of discipline and/or corrective action;
    b. Witnesses and/or statements relied upon to issue discipline and/or corrective action;
    c. Reason for discipline and/or corrective action;
    d. Work rule, policy or procedure violated;
    e. Date of discipline; and
    f. Disciplinary action imposed.

5. Basis for all disciplinary and/or corrective action involving James Suarez, *from 2009 until the present*, including but not limited to:
    a. Investigations conducted before issuance of discipline and/or corrective action;
    b. Witnesses and/or statements relied upon to issue discipline and/or corrective action;
    c. Reason for discipline and/or corrective action;
    d. Work rule, policy or procedure violated;
    e. Date of discipline; and
    f. Disciplinary action imposed.

6. Basis for all disciplinary and/or corrective action involving Dustin Adkins, *from 2009 until the present*, including but not limited to:
    a. Investigations conducted before issuance of discipline and/or corrective action;
    b. Witnesses and/or statements relied upon to issue discipline and/or corrective action;
    c. Reason for discipline and/or corrective action;
    d. Work rule, policy or procedure violated;
    e. Date of discipline; and
    f. Disciplinary action imposed.

7. Basis for all disciplinary and/or corrective action involving George Potts, *from 2010 until the present*, including but not limited to:
    a. Investigations conducted before issuance of discipline and/or corrective action;
    b. Witnesses and/or statements relied upon to issue discipline and/or corrective action;
    c. Reason for discipline and/or corrective action;

        d. Work rule, policy or procedure violated;
        e. Date of discipline; and
        f. Disciplinary action imposed.

(*See* revised Notice at Ex. 4)(Emphasis added). In other words, Plaintiff did not limit the relevant

temporal scope as to either his own nearly 20-year career or that of the other officers (which still

look back over ten years), and persisted in including comparators that are so dissimilar that his

own expert excluded them from his report (Adkins, Flynn, Suarez, and Potts). Under the

circumstances, Defendant informed Plaintiff that it still objected to the 30(b)(6) notice and would

file the instant motion for protective order to get court guidance on the issue.

**III.**    **Legal Argument**

      Rule 26(b)(1) of the Federal Rules of Civil Procedure only allows Plaintiffs to discover

information that is "reasonably calculated to lead to the discovery of admissible evidence." In

practice, that language has limits. Rule 26(b)(2)(C), provides that a Court must limit the

frequency or extent of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained through some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

The limit in Rule 26(b)(1) permits discovery into nonprivileged matters that is relevant:

> . . . and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

      Plaintiff's revised 30(b)(6) notice exceeds these limits. "Because the liberality of pretrial

discovery has a significant potential for abuse, courts may issue protective orders which restrict

permissible discovery if it would unduly annoy or burden the other party." *Boudreau v. Smith*,

No. 3:17-CV-589 (SRU), 2019 WL 5417744, at \*2 (D. Conn. Oct. 22, 2019) (*quoting Joseph L. v. Connecticut Dept. of Children and Families*, 225 F.R.D. 400, 401 (D. Conn. 2005) (*citing Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34 (1984)).

A court may issue a protective order only after the moving party demonstrates good cause. *In re Agent Orange Prod. Liab. Litig*., 821 F.2d 139, 145 (2d Cir. 1987); *LaPlante v. Estano*, 228 F.R.D. 115, 116 (D. Conn. 2005). To establish good cause under Rule 26(c), courts require a particularized demonstration that, despite the broad and liberal construction afforded by the federal discovery rules, the discovery seeks material that is overly broad or not relevant. See, *Wells Fargo Bank, N.A. v. Konover*, No. 3:05CV1924(CFD)(WIG), 2008 WL 11377696, at \*6 (D. Conn. June 10, 2008); *Klein v. AIG Trading Group Inc*., 228 F.R.D. 418, 422 (D. Conn. 2005); *Compagnie Francaise d'Asurrance Pour le Commerce Exterieur v. Philips Petroleum Co.*, 105 F.R.D. 16, 42 (S.D.N.Y. 1984)); *Lamourex v. Genesis Pharmacy Services, Inc*., 226 F.R.D. 154, 159 (D. Conn. 2004). There is good cause for a protective order here.

In assessing whether a protective order is warranted, "the three provisions of [Rule 26(b)(2)] should not be treated as separate and discrete grounds to limit discovery so much as indicia of proper use of discovery mechanisms; they do not call for counsel to undertake complex analysis." *Dongguk Univ. v. Yale Univ*., 270 F.R.D. 70, 73 (D. Conn. 2010) (*quoting* 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2008.1 (3d ed.2010)); *In re Cooper Tire & Rubber Co*., 568 F.3d 1180, 1194 (10th Cir.2009). "Instead, the court will consider the specific facts of the case to make a common sense decision about whether or not the discovery in question goes too far." *Dongguk Univ.,* 270 F.R.D. at 73. The facts at issue in this case suggest common sense limits on the notice issued by Plaintiff.

The 30(b)(6) notice issued by Plaintiff runs afoul of the Rule 26(b)(2) parameters for many reasons. First, it is clearly cumulative of the expansive written discovery that Plaintiff has already pursued and the production of over 25,000 pages of material he has already secured. Forcing Defendant to prepare a witness to testify about what is plainly reflected in that material is both unnecessarily burdensome and needlessly expensive. "Where the notice seeks information which could more easily be obtained from another source, the court may refuse to allow that topic to be the subject of a 30(b)(6) deposition." *Dongguk Univ.*, 270 F.R.D. at 74 (D. Conn. 2010), citing *Gossar v. Soo Line R.R. Co.*, 2009 WL 3570335, at *3, 2009 U.S. Dist. LEXIS 100931, *16–17 (S.D. Ind. Oct. 27, 2009). Notably, "[c]ourts have found Rule 30(b)(6) notices to be unduly burdensome which merely request the duplication of other information already obtained through other discovery methods." *Id.*; *see also Tri–State Hosp. Supply Corp.,* 226 F.R.D. 118, 126 (D.D.C.2005) (because depositions are inherently "time-consuming and inefficient," they ought to "be productive and not simply an excuse to seek information that is already known.") This is clearly the case here because the material produced to date is what would be used to prepare a witness to testify. As a result, the testimony will be costly and time consuming, but add nothing meaningful to what has already been disclosed.

Further, the 30(b)(6) as currently noticed is not proportional to the needs of the case, considering the importance of the issues at stake in the action. This matter involves only one single Plaintiff who remains employed by the City as a Sergeant. He is only able to recover for alleged discrimination that took place within the 300 days prior to his filing a charge of discrimination. Moreover, the allegations of his Amended Complaint are undeniably focused on matters occurring since 2019. Although Plaintiff may use information beyond the 300-day threshold as background information, see *National R.R. Passenger Corp. v. Morgan*, 536 U.S.

101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002); *Lamitie v. Middlesex Hosp.,* 380 F. Supp. 3d 197,

215 (D. Conn. 2019), forcing Defendant to prepare one or more people to discuss matters that

involve over a half dozen officers and unspecified instances that took place five, ten, or more

years ago (during prior administrations) goes beyond mere background information. Instead, it is

plainly disproportionate to the needs of the case, particularly when the material sought to be

covered by the Plaintiff is not actionable. Discovery is not designed for Plaintiff to conduct a

fishing expedition into Defendant's files.

Further underscoring the need for a protective order, many of the topics specified in the

notice delve into matters that are irrelevant on their face. To the extent that Plaintiff intends to

use the treatment of other officers as comparators to create an inference of discrimination, they

must be "similarly situated." See *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).

"To be similarly situated, the individuals with whom [the plaintiff] attempts to compare himself

must be similarly situated in all material respects." *Shumway v. United Parcel Serv., Inc.,* 118

F.3d 60, 64 (2d Cir.1997) (internal citation and quotation marks omitted). "What constitutes 'all

material respects' ... must be judged based on (1) whether the plaintiff and those he maintains

were similarly situated were subject to the same workplace standards and (2) whether the

conduct for which the employer imposed discipline was of comparable seriousness. ... Hence the

standard for comparing conduct requires a *reasonably close resemblance of the facts and*

*circumstances* of plaintiff's and comparator's cases, rather than showing that both cases are

identical." *McKinney v. Department of Transportation*, 168 F. Supp. 3d 416, 424 (D. Conn.

2016)(emphasis added) (*quoting Graham*, 230 F.3d at 40) (citations omitted). The allegations of

the Amended Complaint make manifest that Charles Flynn, Dustin Adkins, George Potts, and

James Suarez were involved in completely different types of behavior than the use of force on a

handcuffed prisoner at issue in Plaintiff's most recent disciplinary struggles. (Amended

Complaint at paras. 13(c), (d), (f) and (g). Indeed, Plaintiff's expert's report only references for

comparison the investigations into Todd Bergeson, Deanna Nott, and Todd Lynch. Obviously

Plaintiff's expert observed that limit because those people were involved in use of force matters.

Thus, testimony that covers topics that Plaintiff's own expert disregarded as insufficiently

comparative should also be excised from the 30(b)(6) topic list.

Notably, Plaintiff's counsel's use of 30(b)(6) notice of the sort at issue here has

previously been curtailed.  *See Bosse v. Dep't of Econ. & Cmty. Dev*., No. 3:20-CV-0760 (JCH),

2021 WL 6337745, at \*4 (D. Conn. May 12, 2021). The Court in *Bosse* concluded that the

specific procedures used and actions taken in connection with the investigation of complaints

were best left to fact depositions of those individuals who conducted the investigation. With that

in mind, the Court granted, in part, defendant's motion for protective order. The same conclusion

is warranted here. If there are specific investigations that Plaintiff wants to inquire about, he

should simply notice the deposition of the person who conducted the investigation at issue or

limit the 30(b)(6) notice to specific incidents.

In the absence of reasonable limitations on topic or time, the 30(b)(6) notice as issued is

little more than an onerous fishing expedition. This should not be permitted. *Lerwick v. Kelsey*,

150 F. App'x 62, 65 (2d Cir. 2005), citing *Waldron v. Cities Serv. Co.,* 361 F.2d 671, 673 (2d

Cir.1966) (discovery curtailed when it appeared to be more of a "fishing expedition" than a

good-faith effort to fill in evidentiary gaps.");*Wells Fargo Bank, N.A. Tr. v. Konover*, No.

3:05CV1924(CFD)(WIG), 2008 WL 11377755, at \*4 (D. Conn. June 30, 2008), citing

*Tottenham v. Trans World Gaming Corp*., 2002 WL 1967023, at \*2, 2002 U.S. Dist. LEXIS

12

11313 (S.D.N.Y. June 21, 2002)(discovery may not be used as a "fishing expedition to discover

additional instances of wrongdoing beyond those already alleged.")

## IV.    CONCLUSION

For the reasons set forth herein, the Defendant respectfully requests that its motion for a

protective order pursuant to Rule 26(b)(2)(C) be granted. Specifically, any 30(b)(6) witnesses'

testimony should be limited as follows:

- Topic 1 shall be limited to any disciplinary and/or corrective action imposed upon Plaintiff since March 23, 2017, which is the three-year period preceding the date on which Plaintiff filed his first administrative charge pertaining to the claims at issue in this suit;

- Topics 2 and 3 should be limited to any disciplinary and/or corrective action imposed upon Todd Lynch or Deanna Nott for any use of force incident in which they were involved since March 23, 2017, which is the three-year period preceding the date on which Plaintiff filed his first administrative charge pertaining to the claims at issue in this suit.

There shall be no query into:

- Topics 4 through 7, which address disciplinary and/or corrective action imposed upon Charles Flynn, Dustin Adkins, George Potts, or James Suarez, who were not involved in use of force incidents;

- any disciplinary and/or corrective action imposed upon any New London Police Officer at any time more than three years preceding March 23, 2020, the date on which Plaintiff filed his first administrative charge pertaining to the claims at issue in this suit;

- any disciplinary and/or corrective action imposed upon any New London Police Officer for anything other than a use of force incident.

**DEFENDANT, CITY OF NEW LONDON**


By    /s/ Johanna G. Zelman
         Johanna G. Zelman (ct26966)
         Craig Dickinson (ct18053)
         FordHarrison LLP
         CityPlace II
         185 Asylum Street, Suite 820
         Hartford, CT 06103
         Tel #:   860-740-1355
         Fax #:  860-578-2075
         Email:   jzelman@fordharrison.com
                   cdickinson@fordharrison.com

14

**CERTIFICATE OF SERVICE**

This is to certify that on this 20th day of September, 2022, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


Jacques Parenteau, Esq.
Claire Howard, Esq,
Madsen, Prestley, & Parenteau, LLC
105 Huntington Street
New London, CT 06320
jparenteau@mppjustice.com
choward@mppjustice.com


                                                    /s/ Johanna G. Zelman
                                                    Johanna G. Zelman